TRINETTE G. KENT (State Bar No. 222020)
3219 E Camelback Rd #588
Phoenix, AZ 85018
Telephone: (480) 247-9644
Facsimile: (480) 717-4781
E-mail: tkent@lemberglaw.com

Of Counsel to
Lemberg Law, LLC
A Connecticut Law Firm
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424

Attorneys for Plaintiff,
Marlena Hernandez

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Marlena Hernandez, | Case No.: 2:16-cv-02455-GHW |
| Plaintiff, | |
| vs. | **PLAINTIFF'S RESPONSE TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S STATEMENT OF UNCONTESTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |
| Rash Curtis & Associates, | |
| Defendants. | |

Plaintiff, Marlena Hernandez ("Plaintiff"), by undersigned counsel, respectfully submits this Response to Defendant's Opposition to Plaintiff's Statement of Uncontested Facts and Conclusions of Law, in support of her Motion for Summary Judgment.

| **Plaintiff's Uncontroverted Facts and Supporting Evidence** | **Defendant's Response to Cited Fact and Supporting Evidence** |
|---|---|
| 1. Plaintiff is an adult individual residing in Stockton, California. [Hernandez Decl. ¶ 1]. | Undisputed. |
| 2. Plaintiff's cellular telephone number is, and at all relevant times was, 209-XXX-3894 (the "3894 Number"). [Hernandez Decl. ¶ 2]. | Undisputed. |
| 3. Plaintiff is the subscriber and authorized user for the 3894 Number which is a Metro PCS wireless telephone number. [Hernandez Decl. ¶ 3]. | Undisputed. |
| 4. Plaintiff pays the bill associated with the 3894 Number. [Hernandez Decl. ¶ 4]. | Undisputed. |
| 5. On October 10, 2015, Plaintiff filled out a "Patient Registration" form with Community Medical Centers, Inc. [Patient Registration Form[1]]. | Undisputed. |
| 6. According to Defendant, the purpose of the Patient Registration Form was to "document the [Plaintiff's] personal information prior to services being | Undisputed but also irrelevant. |

---

[1] Plaintiff submitted a copy of the "Patient Registration Form" as Exhibit A to Plaintiff's motion for summary judgment.

| | |
|---|---|
| rendered." [Def. Response to Interrogatory No.[2] 14]. | |
| 6. Plaintiff's Response<br><br>This fact is relevant to the scope of consent. | |
| 7. The Patient Registration Form contains two separate sections, a "Patient Information" section and a "Financial Information" section, each of which separately sought the patient's contact information. [Patient Registration Form]. | Undisputed but also irrelevant. |
| 7. Plaintiff's Response<br><br>This fact is relevant to the scope of consent. | |
| 8. Plaintiff submitted her cellular telephone number in the "Patient Information" section of the Patient Registration Form. [Patient Registration Form]. | Undisputed. |
| 9. Plaintiff did not submit *any* telephone number in the "Financial Information" section of the Patient Registration Form. Rather, Plaintiff submitted her name, date of birth and mailing address, but left the sections "home phone," "cell," and "work phone" blank. [Patient Registration Form]. | Undisputed but also irrelevant. |
| 9. Plaintiff's Response<br><br>This fact is relevant to the scope of consent. | |
| 10. Plaintiff purposefully provided her phone number to be contacted regarding | Objection: California follows the doctrine of the "objective" theory |

---

[2] Plaintiff submitted a copy of Defendant's Responses to Plaintiff's First Set of Interrogatories as <u>Exhibit G</u> to Plaintiff's motion for summary judgment.

3

| | |
|---|---|
| patient information only. [Hernandez Decl. ¶¶ 13, 16]. | of contracts where the parties' intent is taken from the face of contract. Plaintiff completed the Patient Registration Form which, as part of the contract, included financial matter information. This agreement with CMC and (sic) never expressly stated the now asserted limitation that she provided her cell phone number to be contacted exclusively for patient information. |

10. Plaintiff's Response

The Patient Registration Form is not a bilateral contract, and Defendant has not submitted any evidence supporting its position that the form is a contract. Therefore, California law on contract formation is irrelevant.

By submitting her cell phone in the clearly-marked "Patient Information" section of the Patient Registration Form, and not the "Financial Information" section, Plaintiff consented to receive calls regarding patient information and excluded consent to receive calls regarding financial information.

| | |
|---|---|
| 11. Plaintiff wanted any issues dealing with financial matters to be handled in writing only. [Hernandez Decl. ¶¶ 14, 17] | Objection: California follows the doctrine of the "objective" theory of contracts where the parties' intent is taken from the face of contract. Plaintiff completed the Patient Registration Form which, as part of the contract, included financial matter information. This agreement with CMC and (sic) never expressly stated the now asserted limitation that she provided her cell phone number to be contacted exclusively for patient information.<br><br>Plaintiff never expressed that she only would be contacted on behalf |

4

|  | of CMC in writing as to financial information and the contract contains no such express limitation. |
|---|---|
| 11. Plaintiff's Response  The Patient Registration Form is not a bilateral contract, and Defendant has not submitted any evidence supporting its position that the form is a contract. Therefore, California law on contract formation is irrelevant.  By submitting her mailing address in the "Financial Information" section of the Patient Registration Form, and leaving the sections for her "home phone," "cell," and "work phone" blank, Plaintiff notified CMC that she could be contacted at her mailing address only, in writing, regarding financial matters. ||
| 12. On April 22, 2016, Community Medical Centers referred Plaintiff's account to Defendant for collections. [Def. Response to Interrogatory No. 16]. | Undisputed. |
| 13. "Defendant obtained Plaintiff's number [the 3894 Number] from the referring creditor, Community Medical Centers." [Def. Response to Interrogatory No. 16]. | Undisputed. |
| 14. Specifically, Defendant obtained the 3894 Number from the Patient Registration Form. [Def. Response to Interrogatory No. 17]. | Undisputed. |
| 15. Thereafter, Defendant began placing collection telephone calls to Plaintiff's cellular telephone in an attempt to collect an alleged debt owed to Community Medical Centers, Inc. [Collection Notes[3]]. | Undisputed |
| 16. In total, Defendant placed thirty-eight (38) calls to the 3894 Number between April 22, 2016 and June 14, 2016. [Collection | Undisputed |

---

[3] Plaintiff submitted a copy of Defendant's Collection Notes as <u>Exhibit B</u> to Plaintiff's motion for summary judgment.

| | |
|---|---|
| Notes]. | |
| 17. On May 13, 2016, Plaintiff sent a letter to Defendant (the "May 13, 2016 Letter"), which Defendant received on May 16, 2016. [Hernandez Decl. ¶¶ 5-6; The May 13, 2016 Letter[4]]. | Undisputed |
| 18. The May 13, 2016 Letter complained about Defendant's "TCPA violations" which, according to the letter, made it "unlawful for anyone in the United States to make any call using an automatic telephone dialing system to any cellular telephone." [The May 13, 2016 Letter]. It noted that Plaintiff had "received numerous ATDS calls to [her] cellular phone" from the Defendant and noted that she had "documented nineteen calls to date, from your office." *Id.* The letter additionally complained that Defendant's calls entailed "FDCPA harassment laws [because Defendant] . . . ha[d] been calling my phone more than once a day and not more than a few hours apart." *Id.* The letter complained about Defendant's "nineteen unlawful calls to my cellular phone" and threatened to sue Defendant for the harassing calls. *Id.* It concluded by stating "If you wish to contact me you can email me at [redacted]." *Id.* | Undisputed as to contents of the letter, Disputed as to legal conclusions. |
| 18. Plaintiff's Response<br><br>The contents of the letter is undisputed. Thus, that Plaintiff notified Defendant that she believed it was violating TCPA and FDCPA and that it lacked her permission to call her is also undisputed. | |
| 19. Beginning on May 17, 2017, the day after | Undisputed as to the number of |

---

[4] Plaintiff submitted a copy of the May 13, 2016 Letter, along with USPS tracking information, as <u>Exhibit C</u> to Plaintiff's motion for summary judgment.

6

| | |
|---|---|
| the date Defendant received the May 13, 2016 Letter, Defendant placed twenty (20) subsequent calls to the 3894 Number. [Collection Notes]. | calls made from May 17, 2017 through June 14, 2017. |
| 19. Plaintiff's Response  It is unclear what portion of this statement, if any, Defendant disputes. | |
| 20. On June 3, 2016, frustrated with the continued calls she had received from Defendant, Plaintiff sent another letter to Defendant (the "June 3, 2016 Letter"), which Defendant received on June 6, 2016. [Hernandez Decl. ¶¶ 7-9; The June 3, 2016 Letter[5]]. | Undisputed. |
| 21. The June 3, 2016 Letter stated "I wrote to you on May 13, 2016 advising you that you are making illegal calls to my cell phone using an auto dialer with out [sic] my prior express consent and directed you to only contact me by email. You have still continued to call my cell phone using an auto dialer and leaving pre-recorded messages. You are calling my cellular phone several times a day and harassing me. You do not have my consent nor have you ever had my consent to contact my cell phone. So once again, if you wish to communicate with me you may only do so by email at [redacted]." [The June 3, 2016 Letter]. | Undisputed as to the quoted content of the letter; however, why she would claim (sic) she was revoking consent when she claims she had given express consent in the first place? |
| 21. Plaintiff's Response  There are no inconsistencies in Plaintiff's position. Her letter reiterates to Defendant that it never had any prior express consent to call her in the first place. She wrote, "You do not have my consent nor have you ever had my consent to | |

---

[5] Plaintiff submitted a copy of the June 3, 2016 Letter, along with USPS tracking information, as Exhibit D to Plaintiff's motion for summary judgment.

7

| | |
|---|---|
| contact my cell phone." | |
| 22. After June 6, 2016, the date on which Defendant received the June 3, 2016 Letter, Defendant placed six (6) subsequent calls to the 3894 Number. [Collection Notes]. | Undisputed. |
| 23. Defendant admits that it received the May 13, 2016 Letter and June 3, 2016 Letter. [Def. Response to Interrogatory No. 21]. | Undisputed. |
| 24. Defendant "makes its dialer calls through Global Connect." [Def. Response to Interrogatory No. 3]. | Undisputed. |
| 25. Global Connect is a cloud-based telephone dialer system which "broadcasts" prerecorded or artificial messages to telephone numbers. [Global Connect User Manual at RASHCURTIS0009, 00030, 00042, 00045, 00058, 00047, 00051, 00054, 00068-70]. | Undisputed. |
| 26. Defendant provided Plaintiff with a copy of the user manual (the "Global Connect User Manual")[6] associated with Global Connect, which provides "a detailed description of the many applications for voice broadcasting and how easy it is to use." [Global Connect User Manual at RASHCURTIS00009]. | Undisputed. |
| 27. Global Connect requires users to "upload, creat[e], and stor[e]" "call lists" and "recorded messages" and then schedule, ahead of time, when Global Connect should broadcast those recorded messages to telephone numbers contained in the call list. | Undisputed. |

---

[6] Plaintiff submitted a copy of the Global Connect User Manual as <u>Exhibit E</u> to Plaintiff's motion for summary judgment.

| | |
|---|---|
| [Global Connect User Manual at RASHCURTIS0009]. | |
| 28. "The first step to setting up a broadcast is to import a call list into the Global Connect System." [Global Connect User Manual at RASHCURTIS00029]. | Undisputed. |
| 29. The call list is an excel data file of names and numbers, imported into Global Connect and saved in one of four delineated formats. [Global Connect User Manual at RASHCURTIS00029]. | Undisputed. |
| 30. When the "call list is ready, the next step is to upload the file into the Global Connect System." [Global Connect User Manual at RASHCURTIS00030]. | Undisputed. |
| 31. "Once a call list has been uploaded, [user] will need a broadcast to attach it to. . . An unlimited number of broadcasts (messages) can be created and stored on the Global Connect System." [Global Connect User Manual at RASHCURTIS0042]. | Undisputed. |
| 32. Global Connect sends prerecorded messages to telephone numbers contained in the uploaded call lists. Users of the Global Connect "record a message that will be delivered to a person if they answer the phone," [Global Connect User Manual at RASHCURTIS00045], or "record a message that will be delivered to a recipients [sic] answering machine if no 'live answer' is heard." [Global Connect User Manual at RASHCURTIS00058]. | Undisputed. |
| 33. Global Connect users can also import audio files from their computer to be | Undisputed. |

| | |
|---|---|
| broadcasted. [Global Connect User Manual at RASHCURTIS00047]. | |
| 34. In addition, Global Connect can broadcast artificial messages, i.e., a "message to be read by Text to Speech (TTS) – to have a computer generated voice your typed words." [Global Connect User Manual at RASHCURTIS00051]. Global Connect provides a number of different accents that can be used to read the typed message. [Global Connect User Manual at RASHCURTIS00054]. | Undisputed. |
| 35. Once the message to be broadcasted is chosen, the user schedules "the broadcast for deployment." [Global Connect User Manual at RASHCURTIS00068]. | Undisputed. |
| 36. Global Connect can be programmed to stop the broadcast after it places a predetermined number of messages, or at a predetermined time, for instance at "9pm in each time zone." [Global Connect User Manual at RASHCURTIS00070]. | Undisputed. |
| 37. Global Connect has the ability to transfer the call "back to the call center" only after the message has played and the recipient "presses the 9 key to link back." [Global Connect User Manual at RASHCURTIS00033]. | Undisputed. |
| 38. Global Connect can detect whether a call was answered or not, and can be programmed accordingly. For instance, it can be programmed to "only leave a message on an answering machine" so that if it detects "a person answers the phone, the call will disconnect without playing a message." | Undisputed. |

| | |
|---|---|
| [Global Connect User Manual at RASHCURTIS00060]. Likewise, it can be programmed to "deliver messages to Live Answers only and hang up on answering machines" or to only "leave a message on an answering machine if all call attempts have been exhausted and no live answer was detected." [Global Connect User Manual at RASHCURTIS00059]. | |
| 39. Users of the Global Connect can preprogram how often Global Connect "re-attempts to deliver the message to a 'no answer', busy signal, invalid, or cancelled or fax status." [Global Connect User Manual at RASHCURTIS00060]. | Undisputed. |
| 40. Defendant admits that it called the 3894 Number, that each telephone call it placed to the 3894 Number is contained in its Collection Notes, and that "[e]ach call placed to [the 3894 Number] was initiated via Global Connect." [Def. Response to Interrogatory Nos. 4 and 6]. For each call listed in Defendant's collection notes which "[wa]s initiated via Global Connect, the date of the call is preceded by the letters 'GC'." [Def. Response to Interrogatory No. 7]. | Undisputed. |
| 41. Of the thirty-eight (38) calls reflected in Defendant's Collection Notes, which Defendant placed to Plaintiff, two (2) included the notation "LMOM," which means Global Connect left a broadcasted message on the Plaintiffs' voicemail. [Collection Notes]. | Undisputed. |
| 42. Of the thirty-eight (38) calls reflected in Defendant's Collection Notes, which Defendant placed to Plaintiff, eleven (11) | Undisputed. |

11

| | |
|---|---|
| included the notation "PHONE ANSWERED NO LINKBACK," which means that Plaintiff answered the broadcasted message by Global Connect but did not press a button to connect the call back to Defendant's call center. [Collection Notes; Global Connect User Manual at RASHCURTIS00033]. | |
| 43. When Plaintiff answered Defendant's calls, she heard the prerecorded and artificial broadcast message. [Hernandez Decl. ¶ 11]. | Disputed that Plaintiff ever "answered" a call. |
| 43. Plaintiff's Response<br><br>Immediately above (Par. 42) Defendant *does not dispute* that eleven (11) calls reflected in its Collection Notes "included the notation 'PHONE ANSWERED NO LINKBACK,' which means that Plaintiff answered the broadcasted message by Global Connect but did not press a button to connect the call back to Defendant's call center." | |
| 44. The typical broadcast messages sent to Plaintiff set forth: "Hi, this is Margaret Smith with Rash Curtis & Associates calling with an important business matter for Marlena Hernandez. This is not a sales call. If this is Marlena Hernandez, press the 9 key now to be connected to a representative to discuss this business matter." [Hernandez Decl. ¶ 10; Exhibit F]. | Undisputed. |
| 45. This message was both artificial and prerecorded; the majority of the message was prerecorded by a live person, but additionally utilized Global Connect's Text to Speech (TTS) technology to have an artificial voice read Plaintiff's name. [Hernandez Decl. ¶ 10; Exhibit F; Global Connect User Manual at RASHCURTIS00051]. | Undisputed. |
| 46. The message contains two different | Undisputed. |

12

| | |
|---|---|
| voices (one voice for the majority of the message and the other solely to read Plaintiff's name) and contains a long pause before each time the message states Plaintiff's name. [Exhibit F]. | |
| 47. Finally, of the thirty-eight (38) calls reflected in Defendant's Collection Notes, which Defendant placed to Plaintiff, twenty-five (25) included the notation "NML - MACHINE," which means that Global Connect detected that it had reached an answering machine, and terminated the call without leaving a message. [Collection Notes; Global Connect User Manual at RASHCURTIS00059]. | Undisputed. |
| 48. As a direct result of Defendant's calls to Plaintiff's cellular telephone, and in particular, the fact that Defendant continued to place said calls after receiving two separate letters from Plaintiff asking it to stop calling her, Plaintiff felt harassed, annoyed, frustrated and that her privacy has been invaded by Defendant. [Hernandez Decl. ¶ 11]. | Undisputed, this is what she asserted but deny these "facts" support damages. |
| 48. Plaintiff's Response  Defendant has not submitted any evidence supporting its position that Plaintiff is not entitled to damages. | |

DATED: October 10, 2017         TRINETTE G. KENT

By: /s/ Trinette G. Kent

13

14